UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| RETHA PEIRCE[1], ) | Civil Action No.: 4:14-cv-2927-BHH-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| OFF. CHARLES BRYANT, CHIEF ) | |
| RANDY RIZZO, CHARLENE TAYLOR, ) | |
| JOSEPHINE ISOM, DONNELL ) | |
| THOMPSON, EARLINE EVANS WOODS,) | |
| and TRACY EDGE, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I.  INTRODUCTION

This action arises out of Plaintiff's arrest on April 10, 2009. Pursuant to 42 U.S.C. § 1983, Plaintiff alleges violations of her rights under the First Amendment and Fourth Amendment. She further alleges state law claims for malicious prosecution, abuse of process, defamation, and civil conspiracy. Presently before the Court is Defendants Bryant, Rizzo, Taylor, and Isom's Motion for Summary Judgment (Document # 39). All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(f), DSC. This Report and Recommendation is entered for review by the district judge.

## II.  FACTS

On April 10, 2009, Defendant Bryant, who at the time was a Town police officer, responded to a report of a hit and run accident at the intersection of 31st Avenue S. and Hwy. 17 within the

---

[1]Plaintiff's last name was spelled "Peirce" in the caption of the complaint, and, thus, was docketed as such. However, this appears to be a typographical error as her last name appears as "Pierce" in all other documents.

Town of Atlantic Beach. Incident Report (Ex. 2 to Def. Motion). In making the report, Dorothy Montgomery identified Plaintiff as the person driving a white Chevrolet Trailblazer that side-swiped her vehicle. Id. At the time of the accident, Plaintiff was the Mayor for the Town of Atlantic Beach. Montgomery stated that she pulled into a parking lot to avoid hitting other cars in traffic, and she witnessed Plaintiff stop her car to look at the damage and then got back into the vehicle and drove off. Id. The Honorable Monte Lewis Harrelson, a Horry County Magistrate Judge, found probable cause and issued an arrest warrant for Plaintiff's arrest for hit and run in violation of S.C. Code Ann. § 56-5-1220 and for failing to provide proof of automobile insurance in violation of S.C. Code Ann. § 56-10-225. Arrest Warrant (Ex. 1 to Def. Motion); Traffic Ticket (Ex. 3 to Def. Motion). Defendant Bryant transported Plaintiff to the Horry County Detention Center and Plaintiff was released on bond the following day. Pl. Dep. pp. 114, 120.

Plaintiff concedes that she was driving a white Chevrolet Trailblazer on the day of the accident and that she was involved in an accident. Pl. Dep. pp. 74, 84. However, she states that her vehicle was struck by another vehicle as she turned left across two lanes of traffic. Pl. Aff. p. 1 (Ex. to Pl. Response). Plaintiff states that she continued her turn and pulled over in front of a hotel to assess the damage and to wait and see if the other vehicle would return. Id. After waiting for "awhile" she moved her vehicle a little further down the road and waited for approximately thirty more minutes. Id. p. 2.

Following Plaintiff's arrest, the Town Council for the Town of Atlantic Beach adopted a resolution to have Plaintiff removed as Mayor resulting from her arrest for hit and run. Pl. Dep. p. 127.

On October 29, 2009, Plaintiff was indicted for hit and run by a Horry County Grand Jury

Horry County Public Index – Case No. J322615 (Ex. 5 to Def. Motion). On October 30, 2009, by Executive Order No. 2009-19, the Governor of the State of South Carolina suspended Plaintiff from her office as Mayor of the Town of Atlantic Beach as a result of her arrest and indictment for the April 10, 2009, hit and run. Executive Order No. 2009-19 (Ex. 6 to Def. Motion).

On July 26, 2011, the Fifteenth Circuit Solicitor's Office dismissed the hit and run charge, as a matter of prosecutorial discretion after Plaintiff was found guilty of a separate charge of resisting arrest on July 13, 2011. Pl. Dep. p. 67; Letter from Assistant Solicitor (Ex. 7 to Def. Motion); Horry County Public Index – Case No. J318859 (Ex. 8 to Def. Motion).

On July 23, 2014, the Plaintiff initiated this action.

### III.   STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. at 322. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving

party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## IV.     DISCUSSION

### A.     Statute of Limitations

Defendants argue that all of Plaintiff's claims are barred by the applicable statutes of limitation. Section 1983 does not contain an express statute of limitations. Therefore, in determining the proper statute of limitations in a § 1983 claim, the United States Supreme Court has found that the federal court should adopt the forum state's statute of limitations for personal injury claims. Wilson v. Garcia, 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), superseded by statute on other grounds as stated in Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004); Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1161 (4th Cir.1991)

(stating that since "there is no federal statute of limitations applicable to suits under § 1983, it is the rule that the applicable [statute of limitations] must be borrowed from the analogous state statute of limitations") (internal citations omitted). Under South Carolina law, the statute of limitations for a personal injury claim is three years. See S.C. Code Ann. § 15–3–530(5). Thus, "[t]he statute of limitations for section 1983 causes of action arising in South Carolina is three years." Hamilton v. Middleton, No. 4:02–1952–23, 2003 WL 23851098, at *4 (D.S.C. June 20, 2003); see Hoffman v. Tuten, 446 F.Supp.2d 455, 459 (D.S.C.2006).

Even though the limitations period is borrowed from state law, however, the calculation of when the cause of action accrued is a matter of federal law. National Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1162 (4th Cir.1991). Under federal law, the cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir.1995) (citing United States v. Kubrick, 444 U.S. 111, 122–24, 100 S.Ct. 352, 359–60, 62 L.Ed.2d 259 (1979)). Defendants argue that because the arrest at issue here occurred on April 10, 2009, Plaintiff's § 1983 causes of action, filed on July 23, 2014, are untimely.

Plaintiff alleges three causes of action under § 1983, two of which appear to be essentially the same. Plaintiff's first cause of action alleges that Defendants did "imprison and prosecute the Plaintiff maliciously and without probable cause" and caused "the restrict of the Plaintiff's liberty and freedom of movement . . . without legal justification or probable cause, in violation of her rights under the Fourth and Fourteenth Amendments to the U.S. Constitution to be free from seizure of her person without probable cause." Comp. ¶¶ 15-16. Her second cause of action alleges that Defendants violated Plaintiff's rights under the Fourth Amendment by "causing Plaintiff to be

-5-

restrained and prosecuted without probable cause." Comp. ¶ 18. In both claims, Plaintiff appears to be alleging a malicious prosecution cause of action pursuant to § 1983.

"A malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort. To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (citing Lambert v. Williams, 223 F.3d 257, 261 (4th Cir.2000), Durham v. Horner, 690 F.3d 183, 188 (4th Cir.2012)) (internal citations omitted). Because one of the essential elements of such claims is that criminal proceedings were terminated in Plaintiff's favor, the cause of action does not accrue until the proceedings are terminated. Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 183 (4th Cir. 1996). Plaintiff's charges were terminated on July 26, 2011. Therefore, her claims under § 1983 for malicious prosecution were timely filed on July 23, 2014.

Plaintiff also alleges a free speech claim under § 1983. She alleges that Defendants arrested her without probable cause as a result of her decision to "conduct an assessment and financial accounting of town government." Comp. ¶ 8. As stated above, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim, 64 F.3d at 955. Plaintiff argues that this cause of action also accrued only after the charges against her were dismissed. However, dismissal of the charges was not necessary for Plaintiff to be on notice that her arrest was, as she alleged, in retaliation for her speech on matters of public concern. Plaintiff avers in both her deposition and her affidavit that she did not report the accident to the police because she did not trust them because they were "setting [her] up." Pl. Dep.

88; Pl. Aff. p. 2. Therefore, at the time of her arrest on April 10, 2009, Plaintiff knew the alleged facts of the incident, that is, that she neither hit another person's vehicle nor left the scene of the accident, and she had a concern that the police department had been setting her up. These facts are sufficient such that a reasonable inquiry would reveal her cause of action for retaliation in violation of the First Amendment.[2] Accordingly, this cause of action, filed July 23, 2014, is barred by the statute of limitations.

As for Plaintiff's state law claims, Defendants argue that the two year statute of limitations under the South Carolina Tort Claims Act (SCTCA), S.C.Code Ann. § 15–78–110, is applicable here. SCTCA provides "the exclusive remedy for any tort committed by an employee of a governmental entity. An employee ... who commits a tort while acting within the scope of his official duty is not liable therefor...." S.C.Code Ann. § 15–78–70(a). The SCTCA provides that all claims against governmental entities or employees acting within the scope of their employment must be filed within two (2) years "after the date the loss was or should have been discovered." S.C. Code Ann. § 15-78-110. A governmental employee may be sued individually only if "it is proved that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C.Code Ann. § 15–78–70(b).

Plaintiff argues that Defendants were not acting within the scope of their official duties and that they acted with actual malice and an intent to harm such that the state-law claims against them fall outside the protections of the SCTCA. " 'Scope of official duty' . . . means (1) acting in and about the official business of a governmental entity and (2) performing official duties." S.C.Code

---

[2] The undersigned notes that it has addressed this argument solely as a statute of limitations issue and has not considered the merits of Plaintiff's First Amendment claim.

Ann. § 15-78-30(I). The acts of Defendants about which Plaintiff complains, obtaining a warrant for her arrest and arresting her pursuant to that warrant, fall within the definition of "scope of official duty" as defined in the SCTCA. Further, in McBride v. School Dist. of Greenville County, 389 S.C. 546, 564, 698 S.E.2d 845, 854 (Ct.App. 2010), the court held that neither abuse of process nor malicious prosecution qualify as exceptions to the immunity provided in the SCTCA. Therefore, the two year statute of limitations provided in the SCTCA is applicable for those two causes of action.[3]

As with Plaintiff's § 1983 malicious prosecution claim, her state-law malicious prosecution claim requires a showing that judicial proceedings were terminated in the plaintiff's favor. Law v. S. Carolina Dep't of Corr., 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006). Therefore, the cause of action does not accrue until the proceedings are terminated. As stated above, the proceedings against Plaintiff were terminated on July 26, 2011. Thus, her claim under the SCTCA should have been filed no later that July 26, 2013. Accordingly, her state law cause of action for malicious prosecution is barred by the applicable statute of limitations. Further, even assuming, without deciding, that Plaintiff's abuse of process cause of action also accrued at the conclusion of the proceedings against her, that claim, too would fall outside the statute of limitations.

Unlike malicious prosecution and abuse of process, both civil conspiracy and defamation contain elements that bring them outside of the SCTCA. Because Plaintiff was a public official, to prove her defamation cause of action, she must show actual malice. New York Times Co. v.

---

[3]Plaintiff argues that the SCTCA is not applicable because she has named individual defendants rather than the agency or political subdivision for which they work and Defendants have not moved to substitute their respective agencies as defendants in this action. This argument was rejected in Flateau v. Harrelson, 355 S.C. 197, 206-07, 584 S.E.2d 413, 418 (Ct. App. 2003).

Sullivan, 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Nevertheless, even though her defamation claim falls outside of the SCTCA, the statute of limitations for such a claim is two years. S.C. Ann. § 15-3-550(1); Evans v. Rite Aid Corp., 317 S.C. 154, 158 n.3, 452 S.E.2d 9, 11 n.3 (Ct.App. 1994). Plaintiff alleges that "Defendants caused to be published to numerous third parties on television, internet and other media outlets statements that, Plaintiff was guilty of various criminal charges . . . [and that] this publication was false and known by Defendants to be false." The only evidence in the record regarding publication of Plaintiff's arrest in the media is the local publication Carolina Mugshots, in which Plaintiff's picture was published on or about August 5, 2014, see Ex. 4 to Def. Motion, which is after the instant action was filed. Because it is unclear from the record when this cause of action accrued, the court assumes for purposes of this motion that the cause of action was timely filed and will address the merits of this cause of action later in this report and recommendation.

The tort of civil conspiracy requires (1) a combination of two or more persons, (2) for the purpose of injuring the plaintiff, and (3) causing plaintiff special damage, Vaught v. Waites, 300 S.C. 201, 208, 387 S.E.2d 91, 95 (Ct.App.1989), and thus, requires a showing of an intent to harm. Because these causes of action fall outside the protection of the SCTCA, the general, three-year statute of limitations applies. Plaintiff argues that Defendants worked in concert to arrest her to ultimately remove her from her office as Mayor. At some point following Plaintiff's arrest, the Town Council for the Town of Atlantic Beach adopted a resolution to have her removed as Mayor. Later, on October 30, 2009, one day following the grand jury indictment, the Governor suspended Plaintiff from her office as Mayor of the Town of Atlantic Beach. As stated above, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable

inquiry will reveal his cause of action." Nasim, 64 F.3d at 955. "It is critical that the plaintiff know that he has been hurt and who inflicted the injury. Once imputed with that knowledge, the plaintiff is on inquiry notice, imposing on him a duty to inquire about the details of negligence that are reasonably discoverable." Id. Thus, at least by October 30, 2009, Plaintiff was on inquiry notice that Defendants were allegedly conspiring to injure her. As such, her civil conspiracy cause of action, filed July 23, 2014, falls outside the three-year statute of limitations.

In sum, each of Plaintiff's claims except for her § 1983 cause of action for malicious prosecution and her state law defamation claim are barred by the applicable statutes of limitation.

### B.     § 1983 Malicious Prosecution

As stated above, "[a] malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort. To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (citing Lambert v. Williams, 223 F.3d 257, 261 (4th Cir.2000), Durham v. Horner, 690 F.3d 183, 188 (4th Cir.2012)) (internal citations omitted). Plaintiff argues that Defendant Bryant lacked probable cause for the arrest. "It has long since been settled by the Supreme Court that an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause. . . . Notwithstanding the conclusive effect of the indictments, our precedents instruct that 'a grand jury's decision to indict ... will [not] shield a police officer who deliberately supplied misleading information that influenced the decision.'" Durham v. Horner, 690 F.3d 183, 189 (4th Cir. 2012) (citing Gerstein v. Pugh, 420 U.S. 103, 117 n. 19, 95 S.Ct. 854, 43

L.Ed.2d 54 (1975) (internal quotation marks omitted)); Goodwin v. Metts, 885 F.2d 157, 162 (4th Cir.1989)).  Probable cause "exists when, 'at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense.'" United States v. Johnson, 599 F.3d 339, 346 (4th Cir.2010) (quoting United States v. Manbeck, 744 F.2d 360, 376 (4th Cir.1984)). To establish that the warrant was unsupported by probable cause, Plaintiff must show that Bryant "deliberately or with reckless disregard for the truth made material false statements in his affidavit, or omitted from the affidavit material facts with the intent to make the affidavit misleading." Miller v. Prince George's County Md., 475 F.3d 621, 627 (4th Cir. 2007) (internal citations omitted).  "'Reckless disregard' can be established by evidence that an officer acted with a high degree of awareness of [a statement's] probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Id. (internal citations omitted).

 Bryant's affidavit in support of the arrest warrant states "[t]hat on April 10, 2009, in the Atlantic Beach section of Horry County, one Retha Pierce, while driving a motor vehicle was involved in an accident resulting in damage to the property of the victim and did fail to stop and/or fail to remain at the scene of the accident to provide aid and information as required by law." See Arrest Warrant.  The Incident Report indicates that Bryant responded to a report of a hit and run accident and, upon arriving at the scene, spoke with the victim, Montgomery, who stated that a White Chevy Trailblazer side-swiped her vehicle. See Incident Report.  Montgomery stated that she immediately pulled her car off the highway and into the parking lot of Excitement Video.  Id.  She noticed that the vehicle that hit her stopped and an unknown person got out of the vehicle to inspect

the damage and then got back into the vehicle and drove away. Id. Bryant stated that he spoke with several witnesses who identified the driver of the vehicle as Plaintiff. Id. Bryant indicted that he obtained a witness statement from one of the witnesses[4], but the other witness did not wish to give a statement. Id. The Incident Report does not include the names of the witnesses with whom Bryant spoke. Bryant stated the he took pictures of Montgomery's vehicle, and that he later spotted Plaintiff in a vehicle matching the description of the vehicle involved in the accident, which did have damage to the front. Id. The Incident Report indicates that Bryant was dispatched at 1308 hours, arrived at the scene at 1320 hours, and departed from the scene at 1340 hours. Id.

Plaintiff provides two witness statements, which indicate that Montgomery hit Plaintiff's vehicle and left the scene of the accident while Plaintiff remained on the scene. The statement from Shemeika Hudson is dated April 15, 2009. Hudson Voluntary Statement (Ex. to Pl. Resp.). Hudson states that she "observed a car speeding around another car and hit Mrs. Pierce in the front end of her car. The car kept going/speeding and past 33rd Ave. and did not come back. I ran to Mrs. Pierce and we together waited for about 10-15 minutes for the car to come back and it did not." Id. The second statement[5] was given by Perry Parker. Parker Voluntary Statement (Ex. to Pl. Resp.). This statement is not dated.[6] Parker states that he witnessed Plaintiff turn left across three lanes of traffic and "as Mayor Pierce cleared the first lanes and was approaching the third lane, a light colored vehicle traveling . . . at a high rate of speed clipped the front part of Mayor Pierce's vehicle. After

---

[4]This statement has not been provided to the court.

[5]Plaintiff provided only the second page of this statement in the record.

[6]A fax machine time-stamp at the top of the statement says May 7, 2009. Parker Voluntary Statement.

-12-

the vehicle hit Mayor Pierce's vehicle it kept going . . . and I did not see it stop. Mayor Pierce then stopped her vehicle in front of the Budget Inn near Crazy Horse." Id. The record does not indicate to whom these two statements were given or that Bryant was made aware of these witness statements at the time he completed his affidavit for the arrest warrant. Plaintiff also includes the sworn statement of Benny Webb, a private investigator, dated July 9, 2015, in which Webb states that he investigated the charges that were filed against Plaintiff on April 17, 2015, and spoke with both Hudson and Parker. Webb Statement (Ex. to Pl. Resp.). His statement repeats the same information provided by these two witnesses in their statements. Id.

Based upon the evidence presented, a question of fact exists as to who caused the accident between Plaintiff and Montgomery and who left the scene of the accident. However, these issues are not before the court. Rather, the issue before the court on this malicious prosecution cause of action is whether Bryant "deliberately or with reckless disregard for the truth made material false statements in his affidavit, or omitted from the affidavit material facts with the intent to make the affidavit misleading." Miller, 475 F.3d at 627. There is no evidence in the record that Bryant deliberately falsified his affidavit in order to obtain a warrant for Plaintiff's arrest. Although Plaintiff maintains that "the rush to arrest and indict the Plaintiff for the alleged hit and run was because of the intricately woven conspiracy to get rid of her as the Mayor of the Town of Atlantic Beach," Pl. Aff. ¶ 2, she provides no evidentiary support for this speculative and conclusory statement.[7] Based upon the evidence presented, no reasonable juror could conclude that Bryant

---

[7]Although Plaintiff presents the affidavits of several individuals as well as her own affidavit which state that Defendant Rizzo, the Police Chief for Atlantic Beach, and others frequently harassed Plaintiff with the intent of preventing her from serving as Mayor, these statements do not connect the alleged harassment to the hit and run charge at issue here and are insufficient to create an inference that Bryant deliberately made false statements to obtain a warrant against Plaintiff.

deliberately fabricated the facts included in his affidavit.

"'Reckless disregard' can be established by evidence that an officer acted with a high degree of awareness of [a statement's] probable falsity, that is, when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." Miller, 475 F.3d at 627. The evidence presented to the court shows that Bryant was dispatched to the site of accident at 1:08, arrived at 1:20, and departed at 1:40. See Incident Report. He spoke to Montgomery, who informed him that her vehicle had been struck by someone in a White Chevy Trailblazer and she had seen the individual get out of her car to check for damage, and then leave the accident scene. Id. He spoke to several witnesses who identified Plaintiff as the driver of the vehicle, and he saw Plaintiff later that day driving the same vehicle as the one described by Montgomery. Id.

Hudson, who provided a written statement that she witnessed the accident and it was the driver of the other vehicle who struck Plaintiff's vehicle and left the scene, stated that she waited with Plaintiff at the scene for approximately ten to fifteen minutes and the driver of the other vehicle never returned. See Hudson Statement. It is not clear to whom Plaintiff gave her statement, but it is dated April 15, 2009, which is after the warrant was obtained and Plaintiff was arrested. Id. Hudson does not state that she spoke with Bryant to tell him that it was the other driver who failed to stop following the accident or that she attempted to speak with Bryant.

Parker also testified that he witnessed the accident, and it was the other driver who caused the accident and left the scene. See Parker Statement. It is also not clear to whom Parker gave this statement or when it was given. Nevertheless, he does not state that he provided this information to Bryant or that he attempted to provide this information to Bryant.

Plaintiff avers that she stayed at the scene of the accident for "a while" after Hudson left and then moved farther down the road and waited in a parking lot for approximately thirty minutes. Pl. Aff. ¶ 1. She admits that she did not call the police about the accident. Id.

None of the evidence in the record indicates that Bryant was aware of the version of events as described by Plaintiff, Hudson, and Parker. Nor is there any other evidence that would create a genuine dispute of fact that Bryant had obvious reasons to doubt the accuracy of the information he provided to obtain the warrant. Therefore, Plaintiff fails to create a genuine dispute of material fact on her § 1983 malicious prosecution claim, and summary judgment is appropriate as to that claim.

C.     **Defamation**

"The tort of defamation allows a plaintiff to recover for injury to his or her reputation as the result of the defendant's communications to others of a false message about the plaintiff." Swinton Creek Nursery v. Edisto Farm Credit, ACA, 334 S.C. 469, 484, 514 S.E.2d 126, 133 (1999) (citation omitted). The essential elements of a claim for defamation under South Carolina law are: 1) a false and defamatory statement; 2) unprivileged publication to a third party by defendant; 3) fault on the part of the defendant publisher; and 4) actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.[8] Erickson v. Jones Street Publishers, LLC, 368 S.C. 444, 455, 629 S.E.2d 653, 664 (2006). "In defamation actions involving a public official or public figure, the plaintiff must [also] prove the statement was made with actual malice, i.e., with

---

[8]With respect to the fourth element, defamation that is actionable irrespective of special harm is defamation per se, which includes defamatory statements regarding 1) the commission of a crime, 2) contraction of a loathsome disease, 3) adultery, 4) unchastity, or 5) unfitness in one's business or profession. Fountain v. First Reliance Bank, 398 S.C. 434, 442, 730 S.E.2d 305, 309 (S.C.2012) (citing Goodwin v. Kennedy, 347 S.C. 30, 36, 552 S.E.2d 319, 322-23 (S.C.Ct.App.2001)).

either knowledge that it was false or reckless disregard for its truth." Elder v. Gaffney Ledger, 341 S.C. 108, 113, 533 S.E.2d 899, 901 (2000) (citing New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974)). Malice must be shown by clear and convincing evidence. Miller v. City of West Columbia, 322 S.C. 224, 228, 471 S.E.2d 683, 685 (1996) ("To recover on a claim for defamation, the Constitutional actual malice standard requires a public official to prove by clear and convincing evidence that the defamatory falsehood was made with the knowledge of its falsity or with reckless disregard for its truth."). The parties do not dispute that Plaintiff is a public official.

Plaintiff's defamation claim against these Defendants fails for several reasons. First, she alleges in her complaint that "Defendants caused to be published to numerous third parties on television, internet and other media outlets statements that, Plaintiff was guilty of various criminal charges . . . [and that] this publication was false and known by Defendants to be false." Complaint ¶ 28. However, in her deposition, Plaintiff could not identify any specific, false statements made by any specific Defendant, stating only "[w]ell in general, they all made defamatory statements. . . [t]o the citizens in general when they're saying that I'm guilty of stuff I'm not guilty of." Pl. Dep. 169-70. The South Carolina Court of Appeals has held that similar claims of defamation were too vague to establish that a false and defamatory statement was made by the defendants to third-parties. McBride v. School Dist. of Greenville County, 389 S.C. 546, 562, 698 S.E.2d 845, 853 (Ct. App. 2010). In McBride, the plaintiff argued that "the District superintendent . . . 'made public comments about [plaintiff], her arrest, and her [alleged] misconduct'" and that "'one of the accounts attributed comments to unnamed teachers from the School District.'" Id. at 559, 698 S.E.2d at 851. The court commented that "these are vague references to the local newscasts concerning [plaintiff's] arrest and

are not specific enough to evaluate." Id. at 562, 698 S.E.2d at 853.  Likewise, Plaintiff's deposition testimony that all of the defendants made defamatory statements to the general public about her being "guilty of stuff" is insufficient to establish a defamation claim.[9]  Accordingly, summary judgment is appropriate on Plaintiff's defamation cause of action.

## V.     CONCLUSION

In sum, for the reasons discussed above, Plaintiff's free speech claim under § 1983 and her state law causes of action for malicious prosecution, abuse of process, and civil conspiracy are untimely and, thus, barred by the applicable statutes of limitation.  Further, Plaintiff fails to present sufficient evidence to create a genuine dispute of material fact with respect to her § 1983 malicious prosecution claim and her state law defamation claim.  Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Document # 39) be granted and all claims against Defendants Bryant, Rizzo, Taylor, and Isom be dismissed.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

February 1, 2016
Florence, South Carolina

---

[9]Although Plaintiff does not raise it in her response to the motion for summary judgment, the record does contain a copy of one publication, Carolina Mugshots, which published her picture and the details of her arrest for hit-and-run.  Carolina Mugshots (Ex. 4 to Def. Motion).  However, when asked about this publication during her deposition, Plaintiff admitted that none of the Defendants actually published the article in the magazine or were otherwise involved in the publication of the magazine.  Pl. Dep. 233 ("It's not published by them, but the things that they did to me caused me to get in this publication.").